```
                                    F I L E D
                              CLERK, U.S. DISTRICT COURT

                                   4/14/2021

                              CENTRAL DISTRICT OF CALIFORNIA
                              BY: _____eva_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

September 2019 Grand Jury

| UNITED STATES OF AMERICA, | No. 8:21-cr-00060-JLS |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 371: Conspiracy; 33 U.S.C. § 1319(c)(2)(A): Knowing Discharge Without a Permit in Violation of a Requirement of Approved Pretreatment Program; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| KLEAN WATERS, INC., and TIM MILLER, | |
| Defendants. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A.   THE DEFENDANTS

1.   Defendant KLEAN WATERS, INC. was a corporation that owned and operated a centralized waste treatment facility located in Orange, California ("the facility"), which purportedly treated non-hazardous wastewater from industrial and commercial business customers, before discharging it into the sewer system.

2.   Defendant TIM MILLER was the owner and President of defendant KLEAN WATERS, with the authority and responsibility for defendant KLEAN WATERS' proper treatment and disposal of non-hazardous industrial wastewater.

3.   Co-conspirator #1 was the general manager of defendant KLEAN WATERS, responsible for overseeing the day-to-day operations of the plant and implementing the directions of defendant TIM MILLER.

4.   Co-conspirator #2 was a salesperson at defendant KLEAN WATERS who sold the facility's services to waste-generating businesses and wastewater hauling companies.

B.   THE CLEAN WATER ACT

5.   The Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA"), prohibited the discharge of pollutants, including chemical and industrial waste, into the waters of the United States from any point source without a permit issued under the National Pollutant Discharge Elimination System ("NPDES").  Pursuant to law, the U.S. Environmental Protection Agency ("EPA") authorized the State of California to implement and enforce NPDES permits.

6.   The owner or operator of any source of pollutants was prohibited from introducing such pollutants into a municipal sewer system in violation of a standard or prohibition promulgated under the CWA.

7.   The EPA created "national pretreatment standards" for industrial sources of wastewater that discharged to Publicly Owned Treatment Works ("POTWs"), which were public facilities such as sewage treatment plants that treated municipal sewage or industrial waste of a liquid nature.  POTWs included sewers, pipes, or other conveyances that convey wastewater to a POTW.

8.    POTWs were generally not designed to treat industrial pollutants, including metals like lead, mercury, chromium, and cadmium, which could cause lead poisoning, cancer, and other health problems.  Discharges from industrial or commercial sources could interfere with the operations of a POTW, or pass through a POTW without adequate treatment, causing detrimental effects on the water quality of the receiving water body and posing serious threats to public health and safety.  Accordingly, industrial wastewater dischargers were required to pretreat their wastewater before discharging it to a POTW in order to comply with the National Pretreatment Standards.

9.    Pretreatment included the reduction of the amount of pollutants, the elimination of pollutants, or the alteration of the nature of pollutant properties in wastewater before discharging such pollutants into a POTW.  Dilution as a substitution for pretreatment was prohibited.

10.   The Orange County Sanitation District ("OCSD") operated sewage treatment plants in Fountain Valley and Huntington Beach, California, which were POTWs.  At its POTWs, OCSD was responsible for collecting, treating, disposing of, and recycling wastewater from residential, commercial, and industrial sources within a 471-square mile service area in northern and central Orange County.  OCSD's treated wastewater was either discharged to the ocean or treated further for use in a groundwater replenishment program.

11.   The EPA approved OCSD's local pretreatment program in or about January 1984.  With that approval, OCSD had authority to issue permits to industrial users for the discharge of treated wastewater to a POTW.  Pursuant to the CWA, any violation of any requirement

1    imposed in OCSD's local pretreatment program was a violation of

2    federal law.

3         12.  OCSD enforced the conditions and requirements of the

4    permits it issued.  OCSD monitored the compliance of permit holders

5    by inspecting their facilities and records, reviewing self-monitoring

6    reports, and taking samples of wastewater from inside the facilities,

7    and from the sewer system downstream from the facilities.

8         13.  Defendant KLEAN WATERS had a discharge permit issued by

9    OCSD (the "Permit") that allowed defendant KLEAN WATERS to discharge

10   pretreated industrial wastewater into a sewer system that flowed to a

11   sewage treatment plant operated by OCSD.

12        14.  The Permit specified limits on the concentration of

13   contaminants that could remain in the water after pretreatment by

14   defendant KLEAN WATERS, and required defendant KLEAN WATERS to

15   conduct sampling and analysis of the treated wastewater that it

16   discharged to the sewer system.  Defendant KLEAN WATERS was also

17   required to allow OCSD personnel to inspect its facility and records,

18   and to take samples of its wastewater.

19        15.  These Introductory Allegations are incorporated by

20   reference into each count of this Indictment.

21

22

23

24

25

26

27

28

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   <u>OBJECTS OF THE CONSPIRACY</u>

Beginning on a date unknown to the Grand Jury and continuing to on or about April 17, 2015, in Orange County, within the Central District of California, and elsewhere, defendants KLEAN WATERS and TIM MILLER conspired with others known and unknown to the Grand Jury, including Co-conspirators #1 and #2, to:

1.   Knowingly discharge wastewater in violation of a national pretreatment standard, in violation of Title 33, United States Code, Sections 1317(d) and 1319(c)(2)(A);

2.   Knowingly fail to perform self-monitoring, which was a requirement of OCSD's approved pretreatment program, in violation of Title 33, United States Code, Section 1319(c)(2)(A);

3.   Knowingly make false material statements in self-monitoring reports, in violation of Title 33, United States Code, Section 1319(c)(4);

4.   Knowingly and willfully make false material statements in a matter within the jurisdiction of the EPA, in violation of Title 18, United States Code, Section 1001(a)(2);

5.   Knowingly falsify, tamper with, and render inaccurate a monitoring device and sampling method, in violation of Title 33, United States Code, Sections 1319(c)(2)(A) and 1319(c)(4);

6.   Knowingly discharge untreated wastewater to OCSD's POTW without a permit, which was a requirement of OCSD's approved pretreatment program, in violation of Title 33, United States Code, Sections 1311 and 1319(c)(2)(A); and

7. Knowingly and willfully defraud the United States by using deceitful and dishonest means to frustrate the functions and efforts of the EPA to enforce the CWA.

B. <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED</u>

The objects of the conspiracy were to be accomplished, in substance, as follows:

1. Defendants KLEAN WATERS and MILLER would falsely certify in the permit application to OCSD that defendant KLEAN WATERS would use a hard-piped chemical-dispensing system to treat wastewater, when, in reality, such a system was not used.

2. Defendants KLEAN WATERS and MILLER would falsely represent and certify to OCSD that defendant KLEAN WATERS would conduct daily analysis of pollutant levels in the wastewater accepted for treatment, when, in reality, any such analysis was invalid because it was performed on diluted samples.

3. Defendants KLEAN WATERS and MILLER would accept, and would cause Co-conspirator #1 and other employees of defendant KLEAN WATERS to accept, loads of wastewater at defendant KLEAN WATERS' facility without testing the loads, so that the type and concentration of pollutants in the wastewater remained unknown.

4. Defendants KLEAN WATERS and MILLER would submit to OCSD self-monitoring reports containing data that he knew was false because it was based on diluted samples.

5. Defendants KLEAN WATERS and MILLER would cause Co-conspirator #1 and other employees of defendant KLEAN WATERS not to treat, or not to sufficiently treat, wastewater that had been delivered to defendant KLEAN WATERS for treatment.

6.   Defendant KLEAN WATERS and MILLER would cause Co-conspirator #1 and other employees of defendant KLEAN WATERS to knowingly discharge, or cause to be discharged, untreated wastewater into the sewer system that led to OCSD's sewage treatment plant.

7.   Defendant MILLER, acting as an agent of defendant KLEAN WATERS, would instruct Co-conspirator #1 to dilute samples of wastewater with clean water so that analyses of the samples would show concentrations of pollutants below permit limits.

8.   In order to hide the concentrations of pollutants in the wastewater being discharged from the facility, defendant MILLER, acting as an agent of defendant KLEAN WATERS, would instruct Co-conspirator #1 and other employees of defendant KLEAN WATERS to tamper with the sampling equipment that OCSD had installed inside defendant KLEAN WATERS' facility.

9.   In order to conceal the failure to properly test and treat wastewater, defendant MILLER, acting as an agent of defendant KLEAN WATERS, would refuse to allow, and would instruct Co-conspirator #1 and other employees of defendant KLEAN WATERS to refuse to allow, OCSD staff to inspect logbooks, customer profiles, manifests, and other records, or to collect samples from defendant KLEAN WATERS' holding tanks or from trucks hauling wastewater to the facility.

10.   Defendant MILLER, acting as an agent of defendant KLEAN WATERS, would instruct Co-conspirator #1 and other employees of defendant KLEAN WATERS to tamper with the sampling probes that OCSD had placed in the sewer system downstream from the facility, to prevent the probes from taking accurate samples of defendant KLEAN WATERS' discharged wastewater, and instruct Co-conspirator #2 to look out for OCSD personnel.

11.   After defendant KLEAN WATERS' permit was revoked, defendants KLEAN WATERS and MILLER would cause Co-conspirator #1 and other employees of defendant KLEAN WATERS to discharge the remaining wastewater stored at the facility into the sewer system without treating it.

C.   OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants KLEAN WATERS and MILLER, and others both known and unknown to the Grand Jury, including co-conspirators #1 and #2, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On September 25, 2012, defendants KLEAN WATERS and MILLER applied to OCSD for a permit to operate defendant KLEAN WATERS, falsely certifying that the facility would use a hard-piped system to deliver caustic soda, cationic polymer, anionic polymer, aluminum sulfate, and sulfuric acid into process tanks to treat wastewater.

Overt Act No. 2:   On June 10, 2013, defendants KLEAN WATERS and MILLER submitted to an OCSD inspector a statement falsely certifying that defendant KLEAN WATERS segregated each incoming load of wastewater for individual treatment, and that defendant KLEAN WATERS would be performing daily analysis of the pollutants in the wastewater at the facility.

Overt Act No. 3:   On December 12, 2013, defendant KLEAN WATERS discharged approximately 3,200 gallons of wastewater that contained firefighting foam into the sewer system without treating it or determining its pollutant content.

Overt Act No. 4:   On December 13, 2013, defendant KLEAN WATERS discharged approximately 1,500 gallons of wastewater from washing steel parts into the sewer system without treating it or determining its pollutant content.

Overt Act No. 5:   Between March 6 and 9, 2014, defendant KLEAN WATERS discharged approximately 630,000 gallons of wastewater from the rusting cooling system pipelines of electrical generators into the sewer system without treating it or determining its pollutant content.

Overt Act No. 6:   From March 8 to 9, 2014, defendant KLEAN WATERS discharged untreated black and oily wastewater that contained concentrations of chromium, copper, and titanium above permit limits into the sewer system.

Overt Act No. 7:   From March 8 to 9, 2014, defendant KLEAN WATERS discharged untreated black wastewater that smelled like petroleum and contained a concentration of copper above the permitted level into the sewer system.

Overt Act No. 8:   On April 16, 2014, defendant KLEAN WATERS discharged approximately 500 gallons of wastewater that contained a material categorized as hazardous by the Occupational Health and Safety Administration into the sewer system without treating it or determining its pollutant content.

Overt Act No. 9:   On May 14, 2014, Co-conspirators #1 and #2, at the direction of defendant MILLER and acting as agents of defendant KLEAN WATERS, refused to allow OCSD inspectors to collect samples from trucks transporting wastewater to the facility.

Overt Act No. 10:   On May 15, 2014, Co-conspirator #1, at the direction of defendant MILLER and acting as an agent of defendant

KLEAN WATERS, refused to allow OCSD inspectors to collect samples from holding tanks or trucks transporting wastewater at the facility, or to review any records at the facility.

Overt Act No. 11:   On June 3, 2014, Co-conspirator #1, at the direction of defendant MILLER and acting as an agent of defendant KLEAN WATERS, refused to allow OCSD inspectors to collect samples of untreated wastewater, or to review logbooks, customer profiles, or manifests at the facility.

Overt Act No. 12:   On June 12, 2014, defendant MILLER, acting as an agent of defendant KLEAN WATERS, told OCSD inspectors that other centralized waste treatment facilities were not required to provide inspectors with analytical information, customer profiles, or samples from incoming trucks.

Overt Act No. 13:   On June 19, 2014, Co-conspirator #1, at the direction of defendant MILLER and acting as an agent of defendant KLEAN WATERS, refused to allow OCSD inspectors to review logbooks, customer profiles, transporter information, daily volumes, or waste storage information at the facility.

Overt Act No. 14:   On June 20, 2014, Co-conspirator #1, at the direction of defendant MILLER and acting as an agent of defendant KLEAN WATERS, refused to allow OCSD inspectors to review logbooks, customer profiles, transporter information, daily volumes, or waste storage information at the facility.

Overt Act No. 15:   On July 3, 2014, Co-conspirator #1, at the direction of defendant MILLER and acting as an agent of defendant KLEAN WATERS, refused to allow OCSD staff to take a sample from a truck transporting wastewater at the facility.

Overt Act No. 16:   On July 3, 2014, Co-conspirator #1, acting as an agent of defendant KLEAN WATERS, told OCSD staff that the chemicals depicted in defendant KLEAN WATERS' permit application were unnecessary because all of the wastewater was treated with a single polymer, which, in reality, was a coagulant for treating oily waste.

Overt Act No. 17:   On August 19, 2014, defendant KLEAN WATERS discharged approximately 10,700 gallons of wastewater that it had not treated or tested for pollutants.

Overt Act No. 18:   On August 20, 2014, defendant KLEAN WATERS had, in its holding tanks, wastewater that contained concentrations of chromium, copper, lead, nickel, zinc, cobalt, titanium, and vanadium above permit limits.

Overt Act No. 19:   On August 20, 2014, defendant KLEAN WATERS discharged approximately 30,400 gallons of wastewater that it had not treated or tested for pollutants.

Overt Act No. 20:   On August 20, 2014, Co-conspirator #1, at the direction of defendant MILLER and acting as an agent of defendant KLEAN WATERS, tampered with the sampling equipment at the facility.

Overt Act No. 21:   On August 21, 2014, Co-conspirator #1, at the direction of defendant MILLER and acting as an agent of defendant KLEAN WATERS, refused to allow an OCSD inspector to review transporter truck logs, customer profiles, laboratory analyses, and chemical safety data sheets at the facility.

Overt Act No. 22:   On September 2, 2014, Co-conspirator #1, at the direction of defendant MILLER and acting as an agent of defendant KLEAN WATERS, refused to allow an OCSD inspector to review the logbooks at the facility.

Overt Act No. 23:   On September 18, 2014, defendant KLEAN WATERS discharged wastewater into the sewer system that contained concentrations of chromium, copper, lead, zinc, antimony, cobalt, tin, titanium, and vanadium higher than permit limits.

Overt Act No. 24:   On September 22, 2014, defendant KLEAN WATERS discharged wastewater into the sewer system that contained concentrations of copper and titanium higher than permit limits.

Overt Act No. 25:   On September 23, 2014, defendant KLEAN WATERS discharged wastewater into the sewer system that contained a concentration of titanium higher than permit limits.

Overt Act No. 26:   On September 25, 2014, to prevent OCSD from determining the concentration of pollutants in defendant KLEAN WATERS' wastewater and acting as agents of defendant KLEAN WATERS, Co-conspirator #2 stood watch for OCSD personnel while Co-conspirator #1 tampered with sampling equipment that OCSD inspectors had set in the sewer system downstream from the facility.

Overt Act No. 27:   On September 26, 2014, in a telephone conversation, defendant MILLER, acting as an agent of defendant KLEAN WATERS, told Co-conspirator #2 that OCSD staff had placed sampling equipment in the sewer system that morning, and that he wanted Co-conspirator #2 to look out for OCSD personnel while another employee tampered with the equipment.

Overt Act No. 28:   On September 26, 2014, at the direction of defendant MILLER and acting as an agent of defendant KLEAN WATERS, Co-conspirator #1 tampered with sampling equipment that OCSD inspectors had set in the sewer system downstream from the facility.

Overt Act No. 29:   On October 2, 2014, at the direction of defendant MILLER and acting as an agent of defendant KLEAN WATERS,

Co-conspirator #1 tampered with sampling equipment that OCSD
inspectors had set in the sewer system downstream from the facility.

Overt Act No. 30:   On October 8, 2014, defendant MILLER, acting
as an agent of defendant KLEAN WATERS, certified the accuracy of a
self-monitoring report for the month of September 2014 that contained
false data on pollutant concentrations because it was based on
diluted samples.

Overt Act No. 31:   On October 10, 2014, at the direction of
defendant MILLER and acting as an agent of defendant KLEAN WATERS,
Co-conspirator #1 removed from the sewer stream a sampler that OCSD
inspectors had set in the sewer system downstream from the facility.

Overt Act No. 32:   On November 18, 2014, defendant MILLER,
acting as an agent of defendant KLEAN WATERS, certified the accuracy
of a self-monitoring report for the month of October 2014 that
contained false data on pollutant concentrations because it was based
on diluted samples.

Overt Act No. 33:   On December 16, 2014, defendant KLEAN WATERS
discharged wastewater into the sewer system that contained a
concentration of titanium higher than the permitted level.

Overt Act No. 34:   On December 17, 2014, defendant KLEAN WATERS
discharged wastewater into the sewer system that contained a
concentration of titanium more than six times the permitted level.

Overt Act No. 35:   On February 4, 2015, Co-conspirator #1,
acting as an agent of defendant KLEAN WATERS, falsely told an OCSD
permit engineer that the coagulant used at the facility could adjust
the pH of wastewater and also treat metals waste.

Overt Act No. 36:   On April 17, 2015, after its permit had been
revoked on April 16, 2015, defendant KLEAN WATERS discharged

approximately 1,200 gallons of wastewater into the sewer system that it had not treated or tested for pollutants.

COUNT TWO

[33 U.S.C. § 1319(c)(2)(A); 18 U.S.C. § 2(b)]

[ALL DEFENDANTS]

On or about April 17, 2015, defendants KLEAN WATERS and TIM MILLER knowingly discharged, and willfully caused to be discharged, wastewater from defendant KLEAN WATERS' facility into a drain that conveyed wastewater to a publicly owned treatment works operated by OCSD, without a permit, in violation of a requirement imposed in OCSD's approved pretreatment program.

1

FORFEITURE ALLEGATION

2

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3    1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4 Procedure, notice is hereby given that the United States of America

5 will seek forfeiture as part of any sentence, pursuant to Title 18,

6 United States Code, Section 981(a)(1)(C) and Title 28, United States

7 Code, Section 2461(c), in the event of any defendant's conviction of

8 the offenses set forth in this Indictment.

9    2.    Any defendant so convicted shall forfeit to the United

10 States of America the following:

11    (a)    all right, title, and interest in any and all

12 property, real or personal, constituting, or derived from, any

13 proceeds traceable to the offenses; and

14    (b)    To the extent such property is not available for

15 forfeiture, a sum of money equal to the total value of the property

16 described in subparagraph (a).

17    3.    Pursuant to Title 21, United States Code, Section 853(p),

18 as incorporated by Title 28, United States Code, Section 2461(c), any

19 defendant so convicted shall forfeit substitute property, up to the

20 value of the property described in the preceding paragraph if, as the

21 result of any act or omission of said defendant, the property

22 described in the preceding paragraph or any portion thereof (a)

23 cannot be located upon the exercise of due diligence; (b) has been

24 transferred, sold to, or deposited with a third party; (c) has been

25 placed beyond the jurisdiction of the court; (d) has been

26 //

27 //

28

1    substantially diminished in value; or (e) has been commingled with

2    other property that cannot be divided without difficulty.

3                                          A TRUE BILL

4

5                                          _____
                                           Foreperson
6

7    TRACY L. WILKISON
     Acting United States Attorney
8

9    *Brandon Fox*

10   BRANDON D. FOX
     Assistant United States Attorney
     Chief, Criminal Division
11

12   BENJAMIN R. BARRON
     Assistant United States Attorney
     Chief, Santa Ana Branch Office
13

14   VIBHAV MITTAL
     Assistant United States Attorney
     Deputy Chief, Santa Ana Branch
15   Office

16   ROSALIND WANG
     Assistant United States Attorney
17   Santa Ana Branch Office

18

19

20

21

22

23

24

25

26

27

28